**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DIANA L. LUCAS,                           :
                                          :
                                          :
         Plaintiff,                       :    Case No. 2:25-CV-00176
                                          :
                                          :    Judge Algenon L. Marbley
    v.                                    :
                                          :    Magistrate Judge Kimberly A. Jolson
RICE DRILLING D LLC, *et al.*,            :
                                          :
         Defendants.                      :

## OPINION & ORDER

This matter is before the Court on Defendant Rice Drilling D, LLC ("Rice")'s Motion to Dismiss (ECF No. 35). For the reasons set forth below, this Court **DENIES** Defendant Rice's Motion to Dismiss Lucas's Amended Complaint, or Alternatively to Join a Necessary Party (ECF No. 35).

## I.   BACKGROUND

### A.   Factual Background

Plaintiff, Diane Lucas, is the Executrix of the Estate of Ethel Mae McFarland. (ECF No. 31 at 1). McFarland's family has owned the property at 50050 Methodist Ridge Road, St. Clairsville, OH 43950 for over 100 years. (*Id.* ¶ 1). Following the death of her husband on August 16, 2006, Ethel McFarland was the sole owner of the property until her death on October 5, 2022. (*Id.* ¶ 2). On August 26, 2013, McFarland entered an Oil and Gas Lease with Paloma Partners III, LLC ("Paloma") on her property. (*Id.* ¶ 4). The lease was recorded in Belmont County on September 12, 2013. (*Id.*). Paloma subsequently assigned its leasehold interests to Ascent Resources—Utica, LLC ("Ascent") and XTO Energy Inc. ("XTO"). (*Id.* ¶ 5).

1

### 1. The Lease Agreement

The Oil and Gas lease between McFarland and Paloma granted Paloma access to 54.54 acres of McFarland's property. (ECF No. 31, Exhibit A). In relevant part, the Lease Agreement set out requirements for the Lessee to pay the Lessor a percentage of oil and gas royalties based on the gross proceeds extracted from the leased premises. (*Id.* at 3).

Section 11 of the Lease Agreement, titled "PAYMENTS" provided in relevant part:

> All money due under this Lease shall be paid to the Lessor by check made payable to the order of Lessor and mailed to the address set forth above until delivery to the Lessee of notice of change of ownership or notice of change of address as hereinafter provided. Such payment or tender of any payment due under this Lease and properly addressed and postmarked to the Lessor on or before the paying date shall be deemed payment as provided herein.

(*Id.* at 4). Section 18 of the Lease Agreement, titled "OWNERSHIP CHANGE" stated in relevant part:

> No change or division in ownership of Lessor's interest shall operate to enlarge the obligations or diminish the rights of Lessee. No change or division in Lessor's ownership in the leased premises or in the rentals or royalties hereunder shall be binding on the Lessee until Lessee has received written notice of the conveyance thereof, as provided herein.

(*Id.* at 6). Further, Section 58 of the Lease Agreement, titled "NOTICE" provided as follows:

> If at any time after the execution of the Lease, it shall become necessary or convenient for one of the parties to serve any notice, demand or communication upon the other party, such notice, demand or communication shall be in writing signed by the party servicing notice, sent by nationally recognized overnight carrier or registered or certified United States mail, return receipt requested and postage or other charges prepaid.

(*Id.* at 20).

### 2. The Ethel Lawsuit

On March 19, 2021, McFarland filed a lawsuit ( "the Ethel Lawsuit")[1] in Belmont County against Gateway Royalty V LLC ("Gateway") seeking damages stemming from an alleged

---

[1] The Ethel Lawsuit is captioned *Diana L. Lucas, Executrix of the Estate of Ethel Mae McFarland v. Michael R. Brindle, et al.*, Belmont C.P., No. 21-cv-0044.

fraudulent conveyance of McFarland's mineral rights from the relevant property. (*Id.* ¶¶ 8–9). During the pendency of the Ethel Lawsuit, McFarland passed away, and Lucas became the substitute plaintiff in the Ethel Lawsuit. (*Id.* ¶ 8).[2] Additionally, after the initiation of the Ethel Lawsuit, Rice[3] obtained a leasehold interest in the subject mineral rights via assignments from Ascent Resources-Utica, LLC and  XTO Energy, Inc., recorded on May 5, 2021, and May 26, 2021, respectively. (*Id.* ¶ 6). The interest obtained by Rice in the Paloma Lease was limited to the lands inside the Skyhawk 1 Unit. (ECF No. 31, Exhibit G at 9).

At issue in the Ethel Lawsuit was the issuance of various fraudulent deeds for mineral rights on McFarland's property. (*Id.* at 7–10). The Belmont County court found that in November 2019, Gateway made an offer to purchase mineral rights in McFarland's property. McFarland, however, never accepted the offer nor offered to sell her mineral rights to Gateway. (*Id.* at 7). Subsequently, between December 2019 and June 2020, Michael Brindle, acting as an agent of American Mineral Solutions LLC ("AMS"), also attempted to solicit McFarland to sell her mineral rights to AMS. McFarland informed Brindle she would have to consult her attorney and no deal was ever reached. (*Id.*).

Subsequently, between June 24, 2020, and July 2, 2020, Daniel Spitznagel, the sole member and owner of AMS, received a mineral deed which purported to convey McFarland's mineral rights to Terra Firma Energy & Land Consultants, LLC[4] ("Terra Firma"), allegedly signed by McFarland on June 15, 2020, and recorded in Belmont County on June 24, 2020. (*Id.*). Brindle then obtained a corrective mineral deed at the request of Spitznagel that was also purportedly

---

[2] The Court refers to the subject property at 50050 Methodist Ridge Road, St. Clairsville, OH 43950 as "McFarland's property" and "Lucas's property" interchangeably.

[3] Rice is a subsidiary of EQT. (*See* ECF No. 31 ¶ 7).

[4] Michael Brindle is the sole member and owner of Terra Firma. (*See id.*, Exhibit G at 8).

signed by McFarland on July 15, 2020, and recorded in Belmont County on July 23, 2020. (*Id.* at 8). On June 17, 2020, Terra Firma executed a deed conveying McFarland's mineral rights to AMS, and on July 28, 2020, AMS conveyed those same mineral rights to Gateway. (*Id.*). AMS and Gateway subsequently instructed Ascent and EQT ("Rice") to begin paying their lease and royalty payments to Gateway instead of McFarland. (*Id.* at 10).

On February 12, 2026, the Belmont County court issued a final, appealable, order granting Lucas's motion for summary judgment in the Belmont County case. (ECF No. 31 ¶ 9). The Belmont County court ultimately found that Brindle, Spitznagel, and Gateway acted in concert to forge and record the fraudulent mineral rights deeds ultimately to deprive McFarland of the mineral rights in her property. (ECF No. 31, Exhibit G at 7–10). While both deeds at issue were purportedly notarized by Timothy P. Miller, he testified that he did not notarize, or witness McFarland execute either deed. Further, forensic analysis found that the purported McFarland signatures on the deeds did not resemble her signature on thirty-five other verified documents. As such, the McFarland Deeds were deemed "legally infirm…rescinded, terminated, and made null and void[.]" (*Id*. ¶ 13). Specifically, the court ruled that "Gateway does not own any right, title, or interest in the Real Estate or the Real Estate's Mineral Rights, including oil and gas rights, or the Lease…Plaintiff is entitled to all of lessor's payments under the Lease…Any Lessee—including Ascent, XTO, Rice, and EQT—holding funds in a suspense account pending the outcome of this Lawsuit are hereby ordered to release said funds to Plaintiff, provided that in the event of appeal(s) of this Court's final, appealable order, such funds shall continue to be held in suspense until the final disposition of this lawsuit, including exhaustion of all such appeals, and paid out pursuant to such final disposition." (ECF No. 31 ¶ 11). Additionally, the court opined that "the interests acquired by Rice

and/or EQT are subject to the results of this case by virtue of the doctrine of lis pendens." (*Id*. ¶ 12).

### 3. The Current Dispute

On November 17, 2022, Lucas notified Rice of the Ethel Lawsuit and requested an accounting of all payments Rice had paid out as a result of their leasehold interest. (*Id*. ¶ 14). In an affidavit provided in the Ethel Lawsuit, Rice confirmed it paid Gateway a total of $164,396.95 for production from the Skyhawk 2H, Skyhawk 4H, Skyhawk 6H, Skyhawk 8H, and Skyhawk 10H wells as of April 11, 2023. (*Id*. ¶ 19; ECF No. 31, Exhibit H). At least two royalty payments were paid after Rice received notice of the Ethel Lawsuit. (ECF No. 31, Exhibit H). Then, on September 26, 2024, Lucas sent Rice a demand letter requesting it immediately cease and desist distributing funds to Gateway related to Lucas's mineral rights and return the $164,396.95 wrongly paid to Gateway. (ECF No. 31, Exhibit J). Lucas now brings this current action against Rice seeking: (1) declaratory judgment recognizing her to be the only lawful owner of the subject mineral rights at all times during which Rice held a leasehold interest; (2) damages for breach of lease; (3) specific performance; and (4) indemnification. (ECF No. 31).

### B. Procedural Background

Lucas filed her original Complaint in the Belmont County court of Common Pleas on January 23, 2025, but Rice later removed the action to this Court on February 27, 2025. (ECF No. 7). Rice subsequently filed its first motion to dismiss on March 3, 2025. (ECF No. 9). On March 18, 2025, however, this Court stayed the briefing on Rice's motion to dismiss due to the Ethel Lawsuit. (ECF No. 13). On April 1, 2025, the Parties filed a joint status report in which Plaintiff requested an extension of the stay of the proceedings in light of the pending Belmont County judgment in the Ethel Lawsuit. (ECF No. 14). Defendants opposed the request. (*Id.* at 4).

5

On April 3, 2025, this Court exercised its discretion to extend the stay of the briefing on Rice's motion to dismiss for sixty days. (ECF No. 15). This Court later granted three additional extensions of the stay given that the Parties had not yet received a final appealable order in the Ethel Lawsuit. (ECF Nos. 17, 23, 25). On February 12, 2026, however, a final appealable order was entered in the Ethel Lawsuit. (ECF No. 27). Thus, on February 25, 2026, this Court granted Lucas's unopposed request to file a supplemental complaint (ECF No. 31). (ECF No. 29). On March 20, 2026, Rice filed this current Motion seeking dismissal of the supplemental complaint, or alternatively to join a necessary party. (ECF No. 35). Plaintiffs filed their opposition motion (ECF No. 36) on April 2, 2026, and Rice filed its reply motion (ECF No. 37) on April 10, 2026. The Motion is now ripe for this Court's consideration.

## II.    STANDARD OF REVIEW

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6

Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Finally, the complaint should be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### III.   LAW AND ANALYSIS

Defendant Rice argues Lucas's Complaint shall be dismissed for failure to state a claim because: (1) the doctrine of offensive collateral estoppell cannot apply to this case; (2) the doctrine of *lis pendens* is inapplicable and does not bind Rice to the Belmont County judgment; (3) and Lucas has failed to state a breach of lease claim. In the alternative, Rice argues that this Court should order Lucas to join Gateway as a necessary party pursuant to Rule 19. This Court addresses each argument in turn below.

### A.  Collateral Estoppel

First, Rice contends that Lucas cannot use offensive collateral estoppel against them given that Rice was not a party to the Ethel Lawsuit, nor was Rice in privity with any named defendants in that lawsuit.(ECF No. 35 at 8). In opposition, Lucas argues that Rice had and still has a mutuality of interest with Gateway, who the Belmont County court already deemed did not have oil and gas

rights in Plaintiff's property, and accordingly, Rice is bound by the state-court judgment which deemed Lucas the sole owner of the mineral rights in the property at issue. (ECF No. 36 at 5–6).

Collateral estoppell, also known as "issue preclusion", prevents the relitigation of an issue that was already fully litigated in prior action and resulted in a final judgment. *TERA II, LLC v. Rice Drilling D, LLC*, 679 F. Supp. 3d 620, 637 (S.D. Ohio 2023). District Courts have "broad discretion" to apply collateral estoppel. *Id.* (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)). Further, in a diversity action, "this Court must apply state law to determine whether a prior decision has preclusive effect, but only where the state rule is not incompatible with federal interests." *Id.* (internal quotation marks and citations omitted).

"Under Ohio law, issue preclusion is applicable if: 1) the fact or issue was actually litigated in the prior action; 2) the court actually determined the fact or issue in question; 3) the party against whom issue preclusion is asserted was a party, or in privity with a party, to the prior action." *Osborn v. Knights of Columbus*, 401 F. Supp. 2d 830, 832–33 (N.D. Ohio 2005).

First, the issue of ownership over the mineral rights on Lucas's property was fully litigated in the Ethel Lawsuit as reflected by the Belmont County court determining in a final judgment that "Gateway does not own any right, title, or interest in the Real Estate or the Real Estate's Mineral Rights, including oil and gas rights, or the Lease…Plaintiff is entitled to all of lessor's payments under the Lease.…Any Lessee—including Ascent, XTO, Rice, and EQT—holding funds in a suspense account pending the outcome of this Lawsuit are hereby ordered to release said funds to Plaintiff." (ECF No. 31 ¶ 10). Second, Rice does not dispute that the issue of ownership of the minerals on Lucas's property has already been decided by the Belmont County judgment following summary judgment briefing. (ECF No. 37 at 4). Thus, it is undisputed that the first two requirements for collateral estoppel are present here.

The applicability of collateral estoppel thus hinges on whether Rice was in privity with the Ethel Lawsuit defendants, namely Gateway. The Ohio Supreme Court has opined that what constitutes privity is a "somewhat amorphous." *Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 37 F.4th 1123, 1136 (6th Cir. 2022) (quoting *Brown v. Dayton*, 89 Ohio St. 3d 245, 248, 730 N.E.2d 958, 962 (Ohio 2000)). "To be in privity, two parties need not have a contractual connection.…They need only have 'a mutuality of interest, including an identity of desired result.'…That is, the parties must share a 'close enough' relationship that it would serve preclusion law's purposes to apply the doctrine even though the parties are technically distinct." *Id.* (quoting *Brown*, 730 N.E.2d at 962; *Thompson v. Wing*, 70 Ohio St.3d 176, 637 N.E.2d 917, 923 (Ohio 1994)). The Ohio Supreme Court has noted, however, that "a mutuality of interest only exists if the person taking advantage of the judgment would have been bound by it had the result been the opposite." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 62, 862 N.E.2d 803, 806 (Ohio 2007) (internal quotation marks and citations omitted).

This Court finds that Rice was in privity with Gateway in the Ethel Lawsuit. At issue here is that Rice began making payments to Gateway instead of to McFarland due to Gateway's portrayal that it was the lawful owner of the subject oil and gas rights. Thus, Gateway and Rice shared the desired result of Gateway being named the lawful owner of the subject oil and gas rights. This was clearly demonstrated in Gateway's position on summary judgment in the Ethel Lawsuit, and its overall desired result in having the McFarland deeds declared valid so it would not be found liable for the claims asserted in the Ethel Lawsuit. While Rice was not a party to the Ethel Lawsuit, because the final judgment in that case found McFarland/Lucas to be the lawful owner of the subject oil and gas rights, the judgment deemed that Rice made payments to Gateway, the fraudulent lessor, instead of to McFarland who was rightfully owed such payments. While Rice

9

counters that there was no common desired result between Gateway and Rice given that Rice would have to make royalty payments to either Gateway or Lucas regardless, such argument assumes that Rice is undoubtedly blameless for paying the wrong party pursuant to the Lease Agreement. (ECF No. 37 at 5). For the reasons set forth further below, this Court disagrees. (*See supra* Section III.C). Thus, Gateway and Rice shared a desired result in the underlying lawsuit. *Kessler v. Totus Tuus, L.L.C.*, 923 N.E.2d 1160, 1167, 185 Ohio App. 3d 240, 249 (Ohio App. 11 Dist. 2009) ("It is beyond dispute that these individuals possess a 'mutuality of interest' by virtue of their desire for the same ultimate result, i.e., to have 3740 Holding Trust be declared valid."). [5]

Next, looking to mutuality of interest, Lucas now seeks to use the final judgment in the Ethel Lawsuit to bar Rice from relitigating the issue of ownership in this present lawsuit. This Court finds there was mutuality of interest because even if Gateway was deemed the lawful owner of the subject mineral rights, Lucas would still be bound by the Belmont County judgment and could not seek royalty payments from Rice. *See Johnson's Island, Inc. v. Board of Tp. Trustees of Danbury Tp.*, 431 N.E.2d 672, 675, 69 Ohio St.2d 241, 244–245 (Ohio 1982); *Kessler*, 185 Ohio App. 3d at 249 (finding the party seeking to take advantage of the prior court's ruling would still be bound by the judgment even if the trust at issue was deemed valid). Thus, this Court finds that there is a mutuality of interest and identity of desired result between Gateway and Rice.

Rice, however, contends that privity only exists here if Rice owned an interest in the exact same property that was subject to the Ethel Lawsuit judgment. (ECF No. 35 at 8). Specifically,

---

[5] Rice also contends that this case is distinct from *Kessler* regarding "identity of a desired result" because in that case the lessor and lessees both did not desire for the property at issue to be awarded to lessor's ex-wife or else lessee's leasehold would be invalidated. (ECF No. 37 at 4–5). While Rice's leasehold was not at risk of invalidation like the lease in *Kessler*, Rice still shared a desired result with Gateway given that a finding for Lucas meant Rice violated the provisions of the lease by paying a fraudulent lessor. (*See supra* Section III.C).

Rice contends it is not in privity with Ascent and XTO because when the state court judgment was issued, Ascent and XTO had already assigned the lease portion at issue to Rice, meaning the judgment could not impact the portion of the lease Ascent and XTO no longer owned. (*Id.* at 9). Additionally, Rice argues that because Gateway and Rice received *different* property interests, there is insufficient privity between the parties. That is, that Rice received a fee simple determinable interest from Ascent and XTO, while Gateway purportedly received a reversionary interest in the oil and gas rights from McFarland resulting in two distinct property interests. *Id.* Both of these arguments are unpersuasive.

After the initiation of the Ethel Lawsuit, Rice was assigned interest to the Skyhawk 1 Unit which is a segment of the land at issue in the Ethel Lawsuit. Rice cites no case law to support its argument that as a result of Ascent and XTO assigning a segment of the land prior to the final judgment being issued that the applicability of that final judgment would be vacated. Nor does Rice provide support for its argument that privity only exists when a judgment covers the same type of interest. Rather, Rice cites two cases that declare a party against whom collateral estoppel is asserted must own an interest in the same property that was subject to the final judgment. (*See* ECF No. 35 at 8) (citing *State ex rel. Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 593, 124 Ohio St.3d 449, 454 (Ohio 2010)( refusing to apply collateral estoppel where two different properties were at issue); *Green v. Clair*, 2015 WL 774807, at *5 (Ohio App. 9 Dist. 2015)(refusing to apply collateral estoppel to adjoining parcels)). The Belmont County judgment covered the same land at issue in this action and focused on who was entitled to the royalty payments as a result of production from the subject oil and gas rights. It is not dipositive that Rice maintained an interest in only a segment of the land at issue or that Rice obtained this interest before the final judgment was issued. Rice's arguments are nothing more than a distraction. The Belmont County court

11

explicitly ruled that "the interests acquired by Rice and/or EQT are subject to the results of this case by virtue of the doctrine of *lis pendens*." (ECF No. 31 ¶ 12). Accordingly, there is no doubt that the land in which Rice held an interest in was the same property subject to the state court judgment. Thus, this Court finds collateral estoppel does apply given that Rice was in privity with Gateway due to the parties' shared mutuality of interest and an identity of desired result, despite the two being distinct. Rice is bound by the Belmont County court judgment in the Ethel Lawsuit.[6]

## B. The *Lis Pendens* Doctrine

Rice also argues that the Belmont County court's ruling that the doctrine of *lis pendens* binds Rice by its judgment in the Ethel Lawsuit was erroneous. (ECF No. 35 at 9). Specifically, Rice contends that the *lis pendens* statute cannot apply to Rice because, as argued above, Rice is not claiming a property interest against Lucas's title (the "revisionary interest" in the oil and gas) but instead Rice claims the lessee's interest (the "fee simple determinable"). (ECF No. 35 at 10).

Under Ohio law, the doctrine of *lis pendens* is codified under Ohio Revised Code Section 2703.26 and provides: "When a complaint is filed, the action is pending so as to charge a third person with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title." O.R.C.§ 2703.26. "Lis pendens is a legal doctrine—literally 'a pending lawsuit.' It means that the filing of a lawsuit concerning specific property gives notice to others of the claim alleged in the lawsuit and that a purchaser of the property may take the property subject to the outcome of the lawsuit." *Cincinnati ex rel. Ritter v. Cincinnati Reds, L.L.C.*, 782 N.E.2d 1225, 1235, 150 Ohio App. 3d 728, 741 (Ohio App. 1 Dist. 2002). The doctrine requires that the: "(1) the property be of a character subject to the rule; (2) the

---

[6] It is not dispositive that the Belmont County court judgment is currently on appeal for the purposes of collateral estoppel. *Commodities Export Co. v. U.S. Customs Serv.,* 957 F.2d 223, 228 (6th Cir.1992) ("[I]t is well established that a final trial court judgment operates as res judicata while an appeal is pending.").

12

court have jurisdiction over both the person and the res; (3) the property be sufficiently described in the pleadings; and (4) the property be directly affected by the judgment in the pending suit." *Id.* at 741–742.

Notably, the doctrine cannot be invoked where a party is merely seeking monetary interests. *Medina Gen. Hosp. v. Lackey*, 2002 WL 242114, at *3 (Ohio Ct. App. Feb. 20, 2002) ("We note that the doctrine of *lis pendens* is inapplicable in an action seeking merely a monetary judgment despite the fact that the cause of action arose out of the property specified in the complaint."); 51 Am. Jur. 2d Lis Pendens § 19 ("The *lis pendens* statute applies to an in rem interest in real estate that affects either the title to the property, or a right to the possession of it.... [I]n order to invoke the doctrine of *lis pendens*, it is not sufficient that a property be the source out of which the plaintiff will be compensated; rather, the property that is described for the purpose of invoking the doctrine must be at the very essence of the controversy between the litigants.").

In determining whether the application of *lis pendens* in the Ethel Lawsuit was proper, this Court examines the four requirements listed above. First, Lucas held an interest in the subject property as was determined by the state court. (ECF No. 31, Exhibit G at 13) ("Because a leasehold estate stems from the fee simple estate and can only be granted by the fee simple estate holder, and because the fraudulent deeds are ineffective to convey the fee simple estate, all leasehold interests including the rights to lease payments and royalty payments, remain with Plaintiff."). Second, the Belmont County court undisputedly had jurisdiction over the land at issue and additionally had jurisdiction over Rice who leased a segment of and conducted business on the subject land. Third, there is no dispute that 50050 Methodist Ridge Road, St. Clairsville, OH 43950 was the property at issue and it was sufficiently described in the pleadings. Finally, the fourth factor is also satisfied given that the Belmont County court ruled that Lucas is the lawful owner of the mineral rights and

13

leasehold interests in the property making Lucas's property "the very essence of the controversy between the litigants." (ECF No. 31, Exhibit G at 13); *Katz v. Banning*, 84 Ohio App. 3d 543, 548, 617 N.E.2d 729, 733 (1992). Accordingly, the court held that "the interests acquired by Rice and/or EQT are subject to the results of this case by virtue of the doctrine of *lis pendens*. R.C. 2703.26; *Eastern Sav. Bank v. Bucci*, 2008-Ohio-6363 (7th Dist.); Civ.R. 19(A)." (ECF No. 31 ¶ 12). Thus, this Court finds that the Belmont County court did not err by applying the doctrine of *lis pendens*.

Further, Rice's argument that *lis pendens* cannot apply is unconvincing and notably lacks case law support. Rice claims that *lis pendens* cannot apply because Rice's interest under the Lease is not "against the plaintiff's title." Put simply, Rice owns the Lessee's interest (the "fee simple determinable") while Lucas asserts that she is the true owner of the Lessor's interest (the "reversionary interest" in the oil and gas) which are not the same property interests. (*See* ECF No. 35 at 10). The Ohio Supreme Court has reasoned that "[t]he rights and privileges granted under an oil and gas lease, although limited to the purposes of the lease, are sufficiently vast to affect the possession and custody of the mineral estate, even if not its ownership.… In addition to affecting the value of the property, the lease also affects the transferability of the surface and mineral estates and the right of the lessor to use the surface and mineral estates without restriction, ***and ultimately, grants title in the oil and gas underlying the property to the lessee during the term of the lease***. This effect on ownership, possession, and custody is an inherent attribute of an oil and gas lease." *Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St. 3d 490, 503, 45 N.E.3d 185, 197–198; *see also Browne v. Artex Oil Co.*, 158 Ohio St. 3d 398, 403, 144 N.E.3d 378, 385 ("Ohio is in line with the general consensus among the states that an oil and gas lease creates a real-property interest."). Thus, a lessee's interest in an oil and gas lease directly impacts the lessor's title and cannot be parsed for the purposes of *lis pendens*. Applying that same logic here, although Rice acquired an

14

interest from Ascent and XTO, former lessees, this interest "ultimately, grants title" of Lucas's property to Rice and therefore was acquired against Lucas's title. *See Chesapeake*, 45 N.E.3d at 198. Despite Rice's contentions, there is no evidence that such an interest in the property must be an entirely new interest (not acquired via assignment), be the exact same interest, or that Rice's interest must be invalidated by the underlying lawsuit for *lis pendens* to apply. *See Cincinnati ex rel. Ritter*, 782 N.E.2d at 742 ("Normally, lis pendens involves[:] (1) a plaintiff with title to the subject property[;] (2) a defendant who has some dispute about the property with the plaintiff[;] and (3) a third party who is not a party but ***somehow*** acquires an interest in the subject property while the lawsuit is pending.") (emphasis added); *Bank of New York v. Barclay*, 2004 WL 503935, at *3 (Ohio App. 10 Dist. 2004) ("The general intent and effect of the doctrine of lis pendens is to charge third persons with notice of the pendency of an action, and to make ***any interest acquired*** by such third persons subject to the outcome and judgment or decree of the pending lawsuit.") (emphasis added); 66 Ohio Jur. 3d Lis Pendens § 8 ("[A] finding of fraud is not a prerequisite to the application of lis pendens."). Thus, this Court finds no reason that *lis pendens* would not be applicable here.

In sum, Rice received notice of the Ethel Lawsuit and obtained its leasehold interest in Lucas's property after the initiation of that lawsuit. Thus, Rice obtained its property interest subject to the outcome of the Ethel Lawsuit and the doctrine of *lis pendens* is applicable. *Wheeling Corp. v. Columbus*, 147 Ohio App. 3d 460, 482 (10th Dist. 2001) ("While the doctrine of lis pendens does not prevent persons…from transacting an interest in property subject to litigation, the doctrine does place any such conveyed interest at risk and subject to the final outcome of the litigation.").

### C.  Breach of Lease Claims

15

Next, this Court must address Rice's argument that Lucas has failed to state a breach of lease claim under any of the cited lease provisions. "To establish a claim for breach of contract, Plaintiffs must prove: (1) a contract [existed]; (2) performance by Plaintiffs; (3) breach by Defendants; and (4) damages caused by the breach." *TERA II*, 679 F. Supp. 3d at 660 (citing *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012)). Here it is undisputed that the Lease Agreement between Lucas and Rice was valid nor is it disputed that Lucas performed under the lease. Rather, Rice contends that there was no breach on their part, and therefore no damages.

First, Rice argues that Lucas has failed to state a claim for breach of the "Ownership Change" provision because Rice was permitted to pay royalties to the record owner of the property, who Rice believed was Gateway. (ECF No. 35 at 11). To support its arguments Rice cites to the "Payments" and "Ownership Change" provisions of the Lease Agreement but fails to cite to the "Notice" provision of the Agreement. (ECF No. 35 at 11). Rice is correct that pursuant to the "Payments" provision, all payments to the original lessor "shall be deemed payment" under the Lease *until* the Lessee learns of an ownership change. Rice, however, is incorrect to the extent that it asserts its mere awareness of the Gateway Deed unquestionably satisfied this condition.

As a threshold matter, the "Payments" provision provides that "all money due under this Lease shall be paid to the Lessor by check made payable to the order of Lessor and mailed to the address set forth above *until delivery to the Lessee of notice* of change of ownership or notice of change of address *as hereinafter provided*." (ECF No. 31, Exhibit A). "[A]s hereinafter provided" is a specific reference to the "Notice" provision that Rice ignores. The "Notice" provision requires that notice "shall be in writing signed by the party servicing notice, sent by nationally recognized overnight carrier or registered or certified United States mail recognized overnight carrier or registered or certified United States mail, return receipt requested and postage or other charges

16

prepaid." *Id.* Thus, Rice's contention that it merely received notice of the Gateway Deed, with nothing more, does not satisfy the requirements set out in the "Notice" provision and is therefore insufficient to demonstrate that Lucas failed to state a claim for breach of lease.

Further, Rice's reliance on *Trico Land Co. v. Kenoil Producing, L.L.C.*, does not salvage its arguments. *See* 2014 WL 1572698, at *5 (Ohio App. 5 Dist. 2014) . In that case, the original landowner transferred the relevant property to a new owner, Trico. After acquiring the property, Trico never provided written notice of the change in ownership to the lessee as required by the lease agreement. Subsequently, Trico sought to invalidate the lease, citing the lessee's failure to comply with certain terms in the lease. The *Trico* court declined to invalidate the lease where Trico first failed to comply with the lease provisions. More specifically, the court reasoned that a lessor's failure to comply with a change in ownership clause relieved the lessee of its obligations under the lease and stated that there is no onus on a lessee to "constantly search title records to discover the identity of a lessor so that payments may be properly made." *Id.* This case is distinguishable.

Here, unlike in *Trico*, there is no evidence that McFarland, the true Lessor, failed to comply with the lease Agreement, nor does Rice contend such. Thus, there was no condition precedent violated by Lucas here that would subsequently abdicate Rice from its failure to follow the provisions of the Agreement. Further, Rice cannot foreclose any potential liability based on bare claims that it "had notice of the Gateway Deed." Rice is critically missing key details: the who, what, when, and the how of the alleged notice it received. The Agreement here specifically stated that: (1) all payments are to be paid to the Lessor; (2) and no ownership change would be binding, ***until*** notice was provided in writing pursuant to the "Notice" provision. Rice presents no argument that the alleged notice it received complied with the provisions in the Agreement, requiring the notice to be in writing, signed by the party serving notice, and sent via nationally recognized

17

overnight carrier or registered or certified United States mail, return receipt requested and postage or other charges prepaid. Even more damaging to Rice's arguments is that after it was informed of the Ethel Lawsuit regarding ownership of the oil and gas rights, it made additional payments to Gateway. These facts, in addition to Lucas alleging it suffered damage due to Gateway impermissibly receiving these payments, satisfy the pleading requirements for Lucas's breach of lease claim.

Next, Rice contends that Lucas fails to state a claim for breach of the "Title" provision because that provision is permissive. (ECF No. 35 at 12). The provision provides in relevant part that in the case of a dispute regarding title, the lessee "shall have the right to withhold and retain without accrual or interest all sums payable hereunder which are subject to such controversy or dispute until the final determination of said controversy or dispute." (ECF No. 31, Exhibit A). Rice argues that this provision is permissive, meaning that Rice was not required to withhold payment when learning of the Ethel Lawsuit but had the option to do so. This Court agrees that the provision is permissive, and Lucas does not refute this in her opposition brief. Despite such, the crux of Lucas's breach of lease pleadings is that Rice breached the Lease Agreement by paying Gateway without notice as provided in the Agreement. Thus, even though Rice did not have to stop making payments pending the outcome of the litigation and therefore did not breach the "Title" provision, the allegation that Rice impermissibly made payments to Gateway without proper notice is not defeated.

Finally, Rice argues that Lucas has failed to state a claim for breach of the "Assignment" provision because Rice did not assign its interest in the Lease, and Lucas has not alleged that it was damaged by the assignment to Rice. (ECF No. 35 at 13). The provision provides that the "Lessee shall have the right to assign and transfer the Lease in whole or in part, subject to the

18

written consent of the Lessor, which may not be unreasonably withheld conditioned or delayed."
(ECF No. 31, Exhibit A). Rice argues that any onus as to notifying Lucas of the assignment to
Rice fell on Ascent and XTS, not Rice. This Court agrees. The plain language of the Agreement
makes clear that Ascent and XTS were obligated under the "Assignment" provision, given that
any assignment or transfer must be approved by the Lessor's written consent. It does not follow
logically that Rice would be obligated to ensure performance of this condition precedent. Thus,
this Court finds that Rice did not violate the "Assignment" provision of the lease; however, such
does not defeat Lucas's breach of lease claim in its entirety.

### D.  Joinder

In the event that this Court does not dismiss the Complaint in its entirety, Rice asks that this
Court join Gateway as a necessary party pursuant to Federal Rule of Civil Procedure 19. In Rice's
view, Gateway is a necessary party given there is already a judgment against Gateway that is
subject to appeal which presents a danger of multiple and inconsistent obligations for Rice if this
Court proceeds without Gateway. Specifically, Rice contends it could be subject to the inconsistent
obligation of paying royalties to both Lucas and Gateway if the Belmont County judgment is
overturned and Gateway is declared the rightful owner of the mineral and oil and gas rights at
issue.

To determine if joinder of a party is required, a court must consider three questions: (1) whether
the party is a necessary party under Rule 19(a); (2) whether joining the party will deprive the court
of subject matter jurisdiction; and (3) if joinder is not feasible, if the party is indispensable. *Glancy
v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). Pursuant to Rule 19(a),  a party is
required if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). As the movant, Rice bears the burden of demonstrating that Gateway is a necessary party. *See Eagle Realty Invs., Inc. v. Dumon*, 2019 WL 608830, at *2 (S.D. Ohio Feb. 13, 2019) (citing *Marshall v. Navistar Intern. Transp. Corp.*, 168 F.R.D. 606, 611 (E.D. Mich. 1996)). If Rice fails to demonstrate that joinder of Gateway is necessary pursuant to Rule 19(a), this Court need not reach the remaining two questions discussed above. *Phillips v. Sun Life Assur. Co. of Canada*, 641 F. Supp. 3d 453, 456 (S.D. Ohio 2022).

Rice's joinder argument relies on Federal Rule of Civil Procedure Section 19(a)(1)(B)(ii), which requires a party to be joined if that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. *See* Fed. R. Civ. P.19(a)(1)(B)(ii). The movant must demonstrate more than inconsistent results but rather must show that a party will be subject to inconsistent obligations. *See Phillips*, 641 F. Supp. 3d at 459 ("For example, if two parties were claiming a right to the same policy proceeds, Rule 19(a) may well require joinder to resolve that dispute in a way that does not expose the insurer to an obligation to pay the same proceeds to both parties."). Notably, the risk of inconsistent obligations must be substantial. *Williams-Sonoma*

*Direct, Inc. v. Arhaus*, LLC, 304 F.R.D. 520, 534 (W.D. Tenn., 2015) ("Rule 19(a)(1)(B)(ii) does not, however, direct a court to look to whether there is some risk of substantially inconsistent obligations; instead, Rule 19(a)(1)(B)(ii) directs a court to determine whether there is a substantial risk of any inconsistent obligations").

Here, Rice contends that Gateway is undisputedly a party claiming an interest in Lucas's property, and in the event that the Belmont County judgment is overturned, Rice will be at risk of multiple or inconsistent obligations if this matter proceeds without Gateway. Rice relies solely on *Prosser v. XTO Energy, Inc.*, to support its motion for joinder. *See* 2013 WL 1786456, *1 (S.D. Ohio Apr. 25, 2013). Specifically, Rice argues that "[Lucas's]claims in this case are identical [to those in *Prosser*]—i.e., Plaintiff seeks a declaration 'recognizing her to be the only lawful owner of the subject mineral rights' and a judgment ordering Rice to pay royalties to Plaintiff accordingly." (ECF No. 35 at 16).

This Court finds *Prosser* inapposite. In *Prosser*, the plaintiffs similarly sought a declaratory judgment establishing that they own the entire fee simple interest in the subject property and sought specific performance of an oil and gas lease they entered into with the defendant. *Id.* Unlike in the case *sub judice*, however, there was no prior state court case adjudicating the rightful owner of the subject property in the *Prosser* action. Given that there was no predicate case regarding the subject property, it was relevant that the *Prosser* plaintiffs failed to name all the parties who potentially had an interest in the relevant property in the lawsuit. *Id.* at 2. There, the court ultimately held that without the joinder of the parties whose deed conveyance was the source of the title discrepancy at issue, and who potentially still maintained an interest in the land subject to the interpretation of conveyed deed, the ownership question was impossible to adjudicate. *Id.* at 4. Thus, the court required joinder of those absentee parties. *Id.*

21

Here, the ownership question was already adjudicated in a state court action, in which Gateway was already a party and represented its interest. Critically, Gateway's claimed interest was deemed fraudulent and invalid in that case due to forgery. (See ECF No. 31, Exhibit G at 17). As such, Lucas merely asks this Court to apply the preclusive effect of the state court's judgment to aid in resolving the separate breach of lease action between Rice and Lucas. Accordingly, this Court sees no merit in Rice's argument that Rice would be at a *substantial risk* of inconsistent obligations where a final and appealable order already deemed Gateway's interest to be fraudulent and the product of forgery. This Court is not required to entertain a party whose claimed interest is frivolous. *Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1347 (6th Cir. 1993) (quoting *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)) ("We do not hold, of course, that a district court would be required to find a party necessary based on patently frivolous claims made by that party."). Thus, *Prosser* is inapplicable.

Additionally, the mere fact that Gateway seeks an appeal of the Belmont County judgment does not, with nothing more, present a significant risk of inconsistent obligations for Rice. Rice presents no other case law support for its argument that the appeal of a state law judgment should impact this Court's joinder analysis. Given that Rice bears the burden of proving joinder of Gateway is necessary, yet has failed to do so, this Court need not continue the rest of the joinder analysis. Gateway is not a necessary party under Rule 19(a)(1)(B)(ii). Rice's request for joinder is **DENIED without prejudice.**

## IV.    CONCLUSION

Based on the foregoing, this Court **DENIES** Rice's Motion to Dismiss Lucas's Amended Complaint, or Alternatively to Join a Necessary Party (ECF No. 35).


**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED:  July 17, 2026**

23